## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE,

## NASHVILLE DIVISION

| | |
|---|---|
| Charles Brian Fox and Megan Fox, )<br>Individually and as Parents and )<br>Next Friends of Hailey Fox, )<br>Matthew Fox, Rebecca Fox, and )<br>Sarah Fox, individually, )<br> )<br>**Plaintiffs,** )<br> )<br>vs. )<br> )<br> )<br>Amazon.com, Inc., )<br>W2M Trading Corporation , )<br> )<br>**Defendants.** ) | Case No. 3:16cv03013<br>JURY DEMAND |

## FIRST AMENDED COMPLAINT

### I.  Parties, Jurisdiction, And Venue

1. Plaintiffs Charles Brian Fox (Brian Fox) and Megan Fox, individually and as the parents and next friends of their minor children Hailey, Matthew, Rebecca, and Sarah are residents of Davidson County, Tennessee. They were residents of Davidson County with respect to all of the events described.

2. Amazon.com, Inc. (hereinafter referred to as "Amazon") is a worldwide seller and distributor of products through the well-known website Amazon.com. Amazon.com, Inc. is a Delaware corporation which does business in Tennessee either through itself or the many wholly-owned subsidiaries and affiliated corporations and entities which it controls. Amazon.com, Inc. has no parent company. Amazon.com, Inc. is the sole proper Amazon entity with respect to the allegations made in this First Amended Complaint.

1

3. Amazon contends that W2M Trading Corporation, a New York corporation, participated in the sale of the product at issue. Based on that contention, W2M Trading Corporation is named as a defendant in this action.

4. Plaintiff Megan Fox purchased a self-balancing scooter, more commonly known as a hoverboard, through the Amazon.com website on November 3, 2015. She kept the hoverboard in its box in a closet in the family's house at 6529 Radcliff Drive in Nashville, Davidson County, Tennessee until just before Christmas. As more specifically described below, the hoverboard burst into flames inside the Fox house on Saturday, January 9, 2016. The fire completely destroyed the Plaintiffs' house and virtually all of their personal belongings in a matter of minutes. More importantly, the lives of Hailey (16 years old) and Matthew Fox (14 years old) were nearly taken, but their courage and the heroic efforts of their father allowed them to escape with serious personal and psychological injuries. Brian Fox suffered serious personal and psychological injuries in the process of trying to save his two children. Megan, Rebecca (12 years old), and Sarah Fox (6 years old) suffered serious psychological injuries in witnessing this horrific event and in losing virtually every personal possession.

5. This Court has jurisdiction over Defendants, and venue is proper in this Court.

## II. Facts

### A. Hoverboard Purchase From Amazon.com

6. Plaintiff Megan Fox purchased a self-balancing scooter, more commonly known as a hoverboard (hereinafter referred to as a "hoverboard"), from the Amazon.com website on November 3, 2015.

7. Mrs. Fox determined that the best product was a FITURBO® F1 which she could purchase from Amazon. Amazon represented that the product was a FITURBO® F1, that it was

being shipped from China, that the product was being sold by "W-Deals," and that the product contained an "Original Samsung Advanced Battery." Amazon contends that W-Deals is Defendant W2M Trading Corporation.

8. Mrs. Fox paid $274.79 for the hoverboard through Amazon's website. Her credit card was charged by "Amazon Marketplace Payments".

9. Mrs. Fox kept the hoverboard hidden in a closet in the house. She did not open the shipping package until just before Christmas 2015.

10. The hoverboard in its packaging was wrapped and was given to their son Matthew for Christmas. Inside the hoverboard packaging was a small instruction pamphlet. The instruction pamphlet was entitled "Smart Drifting Scooter" although the packaging refers to the product as "Smart Balance Wheel." The instruction pamphlet contained no warnings about the risk of fire, no warnings about excessive heat following use, and no warnings about excessive heat or the risk of fire while charging the product or shortly thereafter.

### B. The Events of January 9, 2016

11. Matthew and other family members enjoyed the use of the hoverboard from Christmas until January 9, 2016. At no time prior to January 9, 2016 did the Foxes receive any warning from Amazon that the hoverboard could overheat and spontaneously combust, that the lithium battery package was not an "Original Samsung" as represented on Amazon's website, or that the lithium battery package was dangerous and posed a serious risk of injury or death to the Fox family.

12. On the morning of Saturday, January 9, 2016, Brian, Megan, and their youngest daughter Sarah left the house in separate cars to prepare for Matthew's 14th birthday party that

3

evening. Matthew remained in the Fox house while Rebecca had spent Friday night with a friend. Hailey returned to the house around noon.

13. Matthew played inside with the hoverboard while Brian, Megan, and Sarah were gone. After playing with the hoverboard, he left it next to a couch on the first floor.

14. Brian, Megan, and Sarah ate lunch together in the Green Hills area, after which Brian and Megan decided that Brian would go home with Sarah so that she could take a nap. Megan planned to run some errands and return home later.

15. Shortly after Brian and Megan went their separate ways, Megan began to receive text messages from Hailey who had recently returned to the house. At first, Hailey was concerned that someone had broken into the house. Megan tried to assure Hailey that Matthew was in the house and that she was probably hearing him. Megan then called Brian to see how close he was to being home, and then she called Matthew and told him that Hailey thought that someone was in the house.

16. Scared that someone was in the house, Matthew hid in the upstairs bonus room. Hailey hid in her upstairs bathroom. Brian was close to home at the time of these texts and calls.

17. Very soon after Hailey, who had gone to hide in her upstairs bathroom, expressed fear that someone was in the house, she sent the following text message to Megan, "The house is on fire. I can't get out." Megan called 911, at which time she learned that someone else had already called.

18. At about the same time, Brian was calling Hailey as he was turning into the family's subdivision. When Hailey answered, she whispered to her father, "It sounds like people are in the house and now it's on fire." Then the phone line went dead. Brian looked up and saw smoke billowing over the trees. He accelerated toward his house, drove his car over the curb,

and stopped in the front yard in front of the house. Brian told Sarah to stay in the car as he jumped out and ran to the house yelling for help hoping a neighbor would hear him.

19. The house was engulfed in smoke and flames. Brian ran straight to the side door of the house, screaming for Hailey and Matthew. The smoke and fire were so thick that Brian could not see anything. Brian feared that Hailey and Matthew were either dead or dying.

20. Brian went back out the side door and ran to the front door still yelling for anyone to help. He kicked in the front door. The smoke and fire were so thick that again he could barely enter the house. He then ran back to the side door hoping to get in when he heard someone banging on Hailey's bathroom window from the second floor. He was able to see her kicking the window and pleaded with her to break the small window out from the inside. Hailey tried with all her might to break through the double-paned glass, repeatedly kicking the window with all her strength. Eventually she was able to break out and, with smoke billowing from behind her, Brian yelled for Hailey to jump out the window to him. Hailey flung herself through the second floor window, and Brian did his best to break her fall. Hailey's legs were badly cut up, and she was screaming from the pain in her left ankle which twisted when she landed from the second-story fall. Sarah watched all of this take place from the car.

21. At this point, Brian still thought that he was going to be unable to save both children. He ran back to the side door yelling Matthew's name to see if he could locate his son. Not hearing Matthew respond, Brian then ran to the front door and again yelled for Matthew, but to no avail. Brian then ran around the left side of the house to the back hoping to gain entrance into the house but found that it was totally engulfed in flames as well. As he rounded the back of the house, he heard Matthew banging on the second floor window in the bonus room above the garage. Brian grabbed the ladder he kept behind the house and used it to climb up to the window

5

where Matthew was. Brian could see Matthew through the massive fire and smoke and yelled for him to keep trying to break the window. Matthew was banging with all his strength using a step ladder to break the double-paned window.

22. Eventually, despite having to inflict significant injuries on his hands and forearms as well as his legs, Matthew was able to break through the glass. Panicked, Matthew dove out of the second story window into his father's arms. Brian and Matthew fell to the ground from the second floor. Brian turned his body to avoid falling on top of his son.

23. Meanwhile, Megan raced home, not knowing what was happening at her house or if her children or her husband had survived. She feared that her husband and/or her children were dead or dying. As she approached to within a couple of miles of her house, Megan could see a large amount of smoke billowing over the trees in the area of her home. She then received a phone call from Brian telling her that everything had been lost, the house was on fire, and that Hailey and Matthew were alive though badly hurt and bleeding. Megan arrived moments later to see her house fully engulfed in flames and multiple fire engines, but her husband and children injured but alive.

24. Hailey Fox escaped with a severely sprained left ankle and multiple deep lacerations on her legs, which required multiple stitches. Her legs became infected many times since the day of the fire, requiring additional medical treatment over the following weeks and months. She continued to struggle periodically with her injured ankle, but has done her best to carry on her normal activities. But far worse than her personal injuries is the severe psychological injury she suffered from being trapped in a burning house and narrowly escaping with her life. Hailey will carry with her the emotional and psychological injuries inflicted on January 9, 2016 for the rest of her life.

25. Matthew Fox suffered significant lacerations to his hands and legs, requiring stitches. He has suffered nerve damage in his left hand from the lacerations suffered while trying to escape. Like his sister, Matthew has also suffered severe psychological injuries from the terror he experienced during the early afternoon of January 9, 2016.

26. Brian Fox suffered the unspeakable terror of finding out that his two teenage children were trapped in a burning house and believing that he was going to lose one or both of them to the fire which engulfed his home. Additionally, Brian fractured two bones in his right elbow during the fall from the ladder and sprained his left wrist. The injuries to his right elbow have left him with a permanent injury and may require additional medical treatment in the future.

27. Both Sarah Fox and Rebecca Fox witnessed the fire and have suffered psychological injuries from watching their house burn to the ground and not knowing if their father, brother, and sister were going to survive. Also, like all of the rest of their family members, they suffered the loss of virtually all of their personal belongings, which has caused them psychological injury.

28. Aside from the physical and psychological injuries, the Foxes lost their family home and virtually all of their personal property, including sentimental items which can never be replaced. Only a small amount of personal property was recovered. The house was completely destroyed and was ultimately razed. As a direct result of the fire, Brian and Megan Fox have suffered financial losses of over $1,900,000 in the loss of their house and personal property.

### C. The Dangers Of Hoverboards Known To Amazon

29. Prior to January 9, 2016, Amazon knew of multiple instances of fires caused by hoverboards that it had sold and/or distributed. Amazon was notified in writing of at least the following fires erupting from hoverboards sold via Amazon.com:

- November 11, 2015 – Somerville, MA

- November 18, 2015 – Chicago, IL

- November 20, 2015 – Torrance, CA

- November 21, 2015 – Lafitte, LA

- November 27, 2015 – Ashtabula, OH

- November 27, 2015 – Gulf Shores, AL

- December 18, 2015 – Lincoln, NE

- December 23, 2015 – Medford, OR

- January 3, 2016 – Nashville, TN

30. In addition, Amazon knew as a result of being notified of the above fires that nearly all of them involved a product labeled "Smart Balance Wheel" from unknown manufacturers from China, that these products were flooding the American marketplace in the latter part of 2015, that the lithium batteries were almost certainly the source of these fires, and that these deadly products were most often kept in the bedrooms of children.

31. Because they were such popular items for the 2015 Christmas season in the United States as well as western Europe, hoverboards were being manufactured by the hundreds of thousands from unknown manufacturers, predominantly in China. These products were poorly manufactured and were dangerous, primarily because of the poorly manufactured lithium batteries which posed a significant risk of fire and personal injury or death. Amazon knew that the lithium batteries in the hoverboards that it sold and/or distributed were being manufactured in an unsafe manner. Amazon also knew that the lithium batteries in the hoverboards that it sold and/or distributed were being misrepresented on the Amazon.com website as the batteries of leading electronics providers.

32. Amazon engaged in an aggressive sales campaign through the holiday season, ignoring knowledge of the dangers of hoverboards sold and/or distributed through its website for money. Specifically, Amazon was using its "brand" to increase the sales of hoverboards during the 2015 holiday season, including offering incentives to sellers to utilize the Amazon brand to increase the sales of products. Hoverboards were one of, if not the most, popular product of the 2015 holiday season on Amazon's website.

33. Both before and after the fire at the Fox's home, United States and United Kingdom customs authorities seized hoverboards by the thousands for violating safety laws and regulations relating to potentially explosive lithium batteries.

34. All, or nearly all, of the hoverboards being sold and/or distributed by Amazon and others in the United States, including the one sold by Amazon to Mrs. Fox, failed to comply with UN/DOT 38.3, <u>Transport of Dangerous Goods For Lithium Metal and Lithium Ion Batteries</u>. These hoverboards, including the one sold to Mrs. Fox, were extremely dangerous and presented a substantial product hazard, as defined in 15 U.S.C. § 2064(a). Amazon knew of these product hazards well in advance of the fire at the Fox home on January 9, 2016.

### D. Facts Relating To Hoverboard Sold To Mrs. Fox

35. Amazon represented that the hoverboard sold to Mrs. Fox contained an "Original Samsung Advanced Battery." This representation was false. Samsung officials have inspected the hoverboard purchased by Mrs. Fox as well as an intact battery from an identical product sold through the Amazon website. Samsung officials have confirmed that it did not manufacture the lithium battery in the product purchased by Mrs. Fox, that the battery was not manufactured in a manner consistent with Samsung practices and procedures, and that the battery represented as an "Original Samsung Advanced Battery" is a counterfeit.

36. The entity represented as the "seller" for the hoverboard purchased by Mrs. Fox was "W-Deals." That entity is either merely a storefront for Amazon or is otherwise a sham entity. Its registered agent is Mr. Kevin Ma with a Brooklyn, New York address. Despite correspondence sent to that address, no one has responded to Plaintiffs. Moreover, the address for W-Deals found on the Amazon website is an old apartment building in Brooklyn, New York and clearly not a place of business for products like the hoverboard sold to Mrs. Fox. Certainly, the address listed for W-Deals cannot be a manufacturing site.

37. The hoverboard sold to Mrs. Fox was represented as a FITURBO® F1. The "FITURBO" mark is owned by Dongguan Sainstore E-Commerce Ltd. Co. The facts and circumstances indicate that that the hoverboard sold by Amazon to Mrs. Fox was not a FITURBO® F1, but rather was a counterfeit product from China. It was labeled "Smart Balance Wheel," just like the many products sold by Amazon which caused fires, as set forth above. The instruction pamphlet sent with the hoverboard sold to Mrs. Fox is obviously a poor attempt at an English translation, also indicating that the hoverboard came from a foreign country.

38. Plaintiffs requested information in writing from Amazon regarding the identity of the manufacturer of the hoverboard sold and/or distributed to Mrs. Fox, as well as all its components, its importers, and its distributors. The only information provided by Amazon in response was that Defendant W2M Trading Corporation was a seller and that a domain name "fiturbo.com" registered with godaddy.com was the manufacturer. The website "fiturbo.com" contains no contact information. Amazon has, therefore, failed to identify a manufacturer either by name or by address. Consistent with all of the facts previously set forth, it appears that Amazon does not know the identity of the manufacturer of the product sold to Mrs. Fox.

Likewise, Amazon can only point to an apparently non-existent or sham entity as the supposed seller of the product.

### III. Causes of Action

#### A. Products Liability

39. Amazon is a "seller" pursuant to Tenn. Code Ann. § 29-28-102, the Tennessee Products Liability Act of 1978. Based upon the representations of Amazon, Defendant W2M Trading Corporation is also a "seller" under Tennessee law.

40. Defendants had a duty not to sell or distribute any product which was defective and/or unreasonably dangerous. Defendants sold and/or distributed a product which was defective and/or unreasonably dangerous at the time it left the control of the manufacturer or seller. The hoverboard – more specifically the lithium battery pack – spontaneously combusted after normal use, resulting in a catastrophic fire which destroyed the Fox house and inflicted serious physical, psychological, and financial injuries. Defendants are, therefore, liable pursuant to Tenn. Code Ann. § 29-28-105.

41. As a proximate result of Defendants selling and/or distributing the product purchased by Mrs. Fox, Plaintiffs Brian, Hailey, and Matthew Fox suffered serious personal injuries and serious psychological and emotional injuries. As a proximate result of Defendants selling and/or distributing the product, Plaintiffs Megan, Rebecca, and Sarah Fox suffered serious psychological and emotional injuries. Plaintiffs also suffered significant financial losses from the destruction of their real and personal property.

42. All of the facts and circumstances, as set forth above, as well as the inability of Amazon to identify either a manufacturer or a seller, as described above, demonstrate that the manufacturer of the product in question is an unknown entity from China. The identity of the

manufacturer is not known to Plaintiffs despite their best efforts. Plaintiffs, therefore, cannot obtain service of process on the manufacturer.

43. Therefore, the manufacturer or distributor of the product or parts in question are not subject to service of process in Tennessee and the long-arm statutes of Tennessee do not serve as the basis for obtaining service of process. As a result, Defendants are liable for the defective and/or unreasonably dangerous condition of the product sold and shipped to Mrs. Fox, pursuant to Tenn. Code Ann. § 29-28-106.

### B. Negligence – Failure To Warn

44. Amazon had an ongoing duty to warn purchasers of any potential hazardous conditions of products that it sold or distributed, even if Amazon learned of those potential hazards after the products were sold or distributed.

45. By the time Mrs. Fox purchased the hoverboard at issue or very soon thereafter, Amazon was aware that the hoverboards that they had sold or distributed were defective and/or unreasonably dangerous, that the hoverboards posed a substantial and unjustifiable risk of fire, and that the lithium battery packs utilized in these products were poorly manufactured and posed a substantial and unjustifiable risk of fire. Amazon became aware of multiple fires from hoverboards around the United States and in other countries prior to January 9, 2016.

46. Amazon knew or should have known between November 3, 2015 and January 9, 2016 that the product posed a substantial and unjustifiable risk of fire or that the lithium battery packs utilized in these products were poorly manufactured and posed a substantial and unjustifiable risk of fire.

47. Amazon also knew or should have known between November 3, 2015 and January 9, 2016 that many of the representations made on Amazon's website were false.

Specifically, Amazon knew or should have known between November 3, 2015 and January 9, 2016 that the product purchased by Mrs. Fox did not contain an original Samsung battery pack.

48. Despite having knowledge of or access to these facts, Amazon never warned Plaintiffs about the substantial and unjustifiable risk of fire relating to the hoverboard. Amazon's failure to warn, under all the facts and circumstances, constitutes common law negligence.

49. As a proximate result of Amazon's negligence, Plaintiffs suffered serious personal, psychological, and emotional injuries as a result of the fire which destroyed their home. Plaintiffs also suffered significant financial losses from the destruction of their real and personal property.

### C. Intentional And/Or Negligent Misrepresentation

50. Amazon knew, or should have known, that:

a. The hoverboard was falsely represented on their website;

b. The hoverboard did not contain an "Original Samsung Advanced Battery" pack, as represented;

c. The hoverboard was not a FITURBO® F1, as represented;

d. The hoverboard failed to comply with federal law, as more fully described in paragraph 37; and

e. The hoverboard was otherwise unreasonably dangerous.

51. The above representations, either express or implied, about the hoverboard were false when they were made, and they were made knowingly or without a belief in their truth or recklessly. The representations pertained to material facts, and Plaintiff Megan Fox reasonably

relied on them to her detriment and the detriment of all Plaintiffs. Plaintiffs suffered physical, psychological, emotional, and financial injuries as a result of Defendants' misrepresentations.

### D. Tennessee Consumer Protection Act

52. Based on the allegations set forth above, Amazon has engaged in unfair and deceptive trade practices, as defined by the Tennessee Consumer Protection Act. Amazon's conduct constitutes "trade" or "commerce," pursuant to Tenn. Code Ann. § 47-18-103(19).

53. Amazon's actions were unfair because they resulted in the purchase of a product causing substantial injury which could not have been avoided by Plaintiffs and were not outweighed by the countervailing benefits to consumers or competition. Amazon, therefore, has violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104.

54. Amazon's actions were deceptive because they engaged in statements, silence, or actions that caused or tended to cause consumers to believe that which was false or that misled or tended to mislead consumers as to matters of fact. These actions were done intentionally, or negligently.

55. Plaintiffs have suffered serious personal, psychological, emotional, and financial losses as a result of Amazon's unfair and deceptive trade practices.

56. Amazon's actions were "willful or knowing," as defined by Tenn. Code Ann. § 47-18-103(10). Therefore, Plaintiffs are entitled to treble damages and attorney's fees and costs for Amazon's violations of the Tennessee Consumer Protection Act, pursuant to Tenn. Code Ann. § 47-18-109.

### E. Punitive Damages

57. Amazon's actions, as fully described above, were done fraudulently, intentionally, and/or recklessly. Amazon knew that hoverboards, like the one which was sold and sent to the

14

Case 3:16-cv-03013 Document 25 Filed 01/03/17 Page 14 of 17 PageID #: 117

Fox home, were very dangerous products. Despite this knowledge, Amazon sold and/or distributed the product which was misrepresented on their website and which was unreasonably dangerous at the time it was sold or distributed. Likewise, Amazon failed to warn Plaintiffs and/or recall hoverboards in order to make more money during the holiday season despite having direct knowledge of fires involving hoverboards that they sold and/or shipped throughout November and December 2015. The actions of Amazon were reckless under all the facts and circumstances.

58. Plaintiffs, therefore, are entitled to punitive damages in an amount to be determined by the jury.

THEREFORE, Plaintiffs hereby demand:

A. A judgment against Defendants for compensatory damages in the amount of $30,000,000;

B. A judgment against Amazon for treble damages in accordance with the Tennessee Consumer Protection Act;

C. A judgment against Amazon for punitive damages in an amount to be determined by the jury;

D. A jury to hear this case; and

E. Any further, general relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ Steven E. Anderson
Steven E. Anderson, BPR #13143
Sara F. Reynolds, BPR #21469
Anderson & Reynolds PLC
120 30th Ave. North
Nashville, TN 37203
(615) 942-1700
sanderson@andersonreynolds.com
sreynolds@andersonreynolds.com


/s/Mark E. Spear
Mark E. Spear, BPR #11968
Kaylin. L. Hart, BPR #31874
Spear, Spear & Hamby, P.C.
169 Dauphin Street, Suite 200
Mobile, AL 36602
(251) 344-8181
mes@sshlawpc.com
klh@sshlawpc.com

*Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing that a true and exact copy of the foregoing has been served via the Court's CM/EMF system to all parties registered to receive electronic notice on January 3, 2017, including:

Lela Hollabaugh
William Goodman
Fritz Spainhour
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 252-2348
lhollabaugh@bradley.com
wgoodman@bradley.com
fspainhour@bradley.com

*Attorneys for Defendant Amazon.com, Inc.*

And by certified mail, return receipt requested to:

W2M Trading Corporation
c/o Kevin Ma
1643 West 4th Street, Apt. #2R
Brooklyn, N.Y. 11223

/s/ Steven E. Anderson