| | |
|---|---|
| CHARLES BRIAN FOX and MEGAN FOX, Individually and as Parents and Next Friends of HAILEY FOX, MATTHEW FOX, REBECCA FOX, and SARAH FOX, individually, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| AMAZON.COM, INC., W2M TRADING CORPORATION, | ) ) ) |
| Defendants. | ) ) ) |

Case No. 3:16-cv-03013

Judge Crenshaw
Magistrate Judge Frensley

---

**AMAZON.COM, INC.'S MOTION FOR PROTECTIVE ORDER REGARDING
DEPOSITIONS OF SENIOR EXECUTIVES AND IRRELEVANT WITNESSES
AND DEPOSITION TOPICS**

---

## A.     Introduction

Amazon is one of the world's largest companies, presently numbering more than 350,000 employees. It has a product safety team whose mission is to identify and respond to safety issues involving products sold on Amazon's online marketplace, even for products sold by third-party sellers, like the hoverboard at issue in this case. In late 2015, that product safety team evaluated and responded to reports of fires involving hoverboard batteries. Members of that team have knowledge of facts potentially relevant to this litigation. Amazon readily agreed to make available for deposition the then-head of that team, Damon Jones, and other team members whom Plaintiffs requested for deposition.

Plaintiffs nevertheless seek to depose Amazon CEO and founder Jeff Bezos, who had no role in Amazon's hoverboard investigation, and other high-level executives who had at most limited roles. Mr. Bezos was not involved in any meetings or communications about hoverboards

and has no relevant knowledge; Plaintiffs' request to depose him is a transparent pressure tactic that the Court should reject. Plaintiffs similarly noticed the depositions of two other senior Amazon executives, Doug Herrington and Carletta Ooton. Though they had some high-level involvement in the hoverboard events because people who reported to them participated, the product safety team members can provide all of the relevant facts in significantly more detail than Mr. Herrington or Ms. Ooton. Plaintiffs should start with the relevant employees and only be allowed to depose Mr. Herrington and Ms. Ooton on a showing that Plaintiffs cannot obtain relevant facts from more logical and less burdensome sources.

Amazon does not object to making employees available for depositions to discuss hoverboards, but there are limits. The discovery rules protect parties from unnecessary burdens and channel discovery toward the most cost-effective and least burdensome means for obtaining the facts they need. Plaintiffs plainly do not need to depose the CEO of a 350,000-employee company who had no involvement in the relevant events; they seek the perceived prestige of deposing one of America's most prominent corporate figures. There is also no need to depose other top Amazon executives to get information about hoverboard safety issues; the product safety team can provide all of the relevant information. Any marginal value of these depositions is vastly outweighed by the burden on these witnesses and Amazon. The Court therefore should enter a protective order precluding the depositions of Jeff Bezos, Doug Herrington, and Carletta Ooton, as well as two other employees (Lena Bryant and Rachel Moss) who were not involved in the hoverboard events.

Plaintiffs also served a Rule 30(b)(6) deposition notice, and Amazon is designating witnesses to address many of the topics. As with the individual deponents, Amazon has tried to work with Plaintiffs to narrow the topics to those relevant to this case. But Plaintiffs have refused

to strike topics that are not relevant, such as regulations governing shipment and storage of hazardous materials that have no application to a case like this where a third party sold, shipped, and stored the product at issue. The Court should enter a protective order striking these irrelevant topics from the Rule 30(b)(6) deposition notice.

**B.      Factual Background and Plaintiff's Proposed Deponents**

This case involves a fire that destroyed Plaintiffs' residence on January 9, 2016.  Plaintiffs allege the fire was caused by a hoverboard that Megan Fox purchased from defendant W-Deals on the Amazon.com marketplace. Although Plaintiffs alleged in their initial complaint that Amazon shipped the hoverboard, that allegation was based on an order receipt for a different product and Plaintiffs amended to remove those erroneous allegations. (Compl. ¶ 11; Amended Compl. ¶¶ 6-10) Amazon did not manufacture, sell, store, or ship the product in question.

In late 2015, there were press reports about fires allegedly caused by hoverboard batteries. The Consumer Product Safety Commission also began soliciting information about reports of fires alleged to involve hoverboards. In response, the Amazon product safety team, under the direction of its manager, Damon Jones, analyzed the safety of lithium ion batteries in hoverboards. That team provided information to a group comprising primarily product safety, product compliance, representatives of the retail and marketplace business groups, and the legal department. That group was also responsible for determining what action Amazon should take. Amazon quickly decided to remove all hoverboard listings from the Amazon.com online marketplace, regardless of whether any particular hoverboard model was the subject of any reported issue. (Exhibit A, Declaration of Damon Jones, ¶ 5)

Plaintiffs served extensive written discovery on Amazon, and Amazon has produced numerous documents regarding hoverboards and the seller in this case, W-Deals. Plaintiff has since requested the depositions of Amazon's CEO and six other employees and served a lengthy Rule

3

30(b)(6) deposition notice, copies of which are attached as Exhibits B and C. Amazon has agreed to make two of the employees, Damon Jones and Jeremy Pelley, available, as they were directly involved in and knowledgeable about the hoverboard events, and has agreed to most of the proposed 30(b)(6) topics.

### 1. The Individual Deponents

The individual depositions Plaintiffs noticed (Ex. B) fall into four categories:

#### a. Product Safety Employees (Damon Jones and Jeremy Pelley)

Plaintiff requested to depose two Amazon employees who were involved in the decision to remove hoverboard listings from Amazon.com. Damon Jones was the manager of product safety and recalls at the time of the hoverboard events, and now works in a different part of the company. Jeremy Pelley was on the product safety team and reported to Mr. Jones. Amazon agreed to produce both witnesses in late September.

#### b. Amazon CEO Jeff Bezos

Jeff Bezos is Amazon's founder, CEO, President, and Chairman of the Board. Amazon seeks a protective order precluding Mr. Bezos's deposition because he had no involvement in the hoverboard events, and any conceivable relevance of his testimony is dwarfed by the burden and inconvenience on Amazon and Mr. Bezos.

#### c. Senior Executives Doug Herrington and Carletta Ooton

Plaintiffs seek to depose two other senior executives: Doug Herrington (Senior Vice President, North American Retail), and Carletta Ooton (Vice President, Health and Safety, Sustainability, Security & Compliance). Amazon seeks a protective order for these depositions. Mr. Herrington and Ms. Ooton have no relevant knowledge that is not readily available, and in more detail, from Mr. Jones and Mr. Pelley, who headed and directly participated in the product safety team's evaluation and response to reports of hoverboard incidents. As with Mr. Bezos,

4

forcing Mr. Herrington and Ms. Ooton to divert extensive time away from running core aspects of Amazon's business in order to prepare and sit for depositions would be unfairly burdensome and grossly disproportionate to the information they can provide.

### d. Dangerous Goods Department Employees (Lena Bryant & Rachel Moss)

Plaintiffs seek to depose Lena Bryant and Rachel Moss, two employees from Amazon's "Dangerous Goods Department." Amazon seeks a protective order for these depositions because this department has no relevance to this case. The Dangerous Goods Department addresses compliance with regulations on shipping and transporting certain enumerated "dangerous goods," also known as hazardous materials. The hoverboard in this case was sold and shipped by W-Deals, not Amazon. Amazon never touched it. The Dangerous Goods Department had no role relevant to this case, and requiring these depositions would constitute an undue burden.

### 2. Rule 30(b)(6) Deposition

Plaintiffs also served a Rule 30(b)(6) deposition notice on Amazon listing 14 topics, several of which include multiple sub-topics. Amazon intends to produce one or more deponents for most of these topics. That deposition, of a person or people prepared to address the specific topics of relevance to this suit, make the individual depositions of senior Amazon executives even more unnecessary and inappropriate. But some of Plaintiffs' proposed 30(b)(6) topics have no relevance to this case, and it would be a significant burden for Amazon to prepare and make available witnesses to testify about those topics.

## C. Legal Standard

The stated intention of the Federal Rules of Civil Procedure is to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The Rules permit the Court to limit or forbid discovery by entering protective orders to, among other things,

5

"protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

More importantly, and relevant to this case, the Rules require the Court to channel discovery toward the least burdensome and least costly method to obtain the facts the parties need. Specifically, Rule 26 states that the Court "must limit the frequency or extent of discovery otherwise allowed" by the rules "if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," *or* "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii). The Rule also requires the Court to preclude discovery outside the scope of Rule 26(b)(1), which sets not just a relevance threshold but also requires that the discovery be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Among the considerations that bear on proportionality are the "importance of the discovery in resolving the issues" and whether the "burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

**D.     Argument**

**1.     The Court should preclude the deposition of CEO Jeff Bezos and the other senior executives**

"Virtually every court that has addressed deposition notices directed at officials at the high level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for harassment." *Bank of the Ozarks v. Capital Mortg. Corp.*, No. 4:12-MC-00021 KGB, 2012 WL 2930479, at *1 (E.D. Ark. July 18, 2012) (quotation marks omitted); *accord El Camino Res., Ltd. v. Huntington Nat. Bank*, No. 1:07-CV-598, 2008 WL 4833009, at *1 (W.D. Mich. Nov.

6

5, 2008).[1] Some courts follow the "apex doctrine" that presumptively bars such depositions until it is established that there is no alternative to obtain the information. *See, e.g.*, *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW JL, 2011 WL 1753982, at *6 (N.D. Cal. May 9, 2011) ("Courts regularly require interrogatories, requests for admission, and depositions of lower level employees before allowing the deposition of an apex witness.").

In the Sixth Circuit, the "'apex doctrine' protecting high corporate officers against depositions is not an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." 8A Wright, et al., Fed. Prac. & Proc. Civ. § 2036 (3d ed. 2017) (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). "As with any other protective order, the court should look for guidance to a balance of the likelihood of oppression or harassment compared to the value of the inquiry in generating important information." *Id.* Discovery "has limits and these limits grow more formidable as the showing of need decreases. Thus even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Serrano*, 699 F.3d at 901 (quoting 8A Wright, et al., Fed. Prac. & Proc. Civ. § 2036 (3d ed. 2012)) (quotation marks and alteration marks omitted).

The senior executives Plaintiffs seek to depose have, in the case of CEO Jeff Bezos, no relevant information, or, in the case of Mr. Herrington and Ms. Ooton, no relevant information that cannot be obtained in even more detail from the product safety personnel who were directly involved in the hoverboard issue.

---

[1] Per Local Rule 7.01(e)(5), a copy of cases not published in an official reporter are attached as Exhibit D.

### a. CEO Jeff Bezos

Jeff Bezos is the founder, CEO, President, and Chairman of the Board of Amazon. He runs a 350,000-employee company with worldwide operations. As the Court will be aware, Mr. Bezos has become one of the highest-profile corporate leaders in the world. He was not involved in the hoverboard events Plaintiffs seek to probe. (Jones Decl. ¶ 9) He attended no meetings regarding hoverboards and was not on any of the emails or other communications relating to Amazon's response to hoverboard safety concerns. (Jones. Decl. ¶ 9)

As Damon Jones explains in his declaration, Mr. Bezos would not be involved in such an issue. Amazon is a vast organization, currently numbering more than 350,000 employees. The CEO and other top management delegate many things to parts of the organization that have the mission, resources, and expertise to address issues like product safety. (Jones Decl. ¶ 9) In the case of hoverboard incident reports, the relevant team was product safety, headed by Mr. Jones, who will be deposed in late September. (Jones Decl. ¶¶ 3-6)

Plaintiffs' asserted basis for deposing Mr. Bezos is two emails sent to [jeff@amazon.com](jeff@amazon.com) from customers alleging that hoverboards purchased on Amazon overheated or caused fires. One of the emails was forwarded to the company's General Counsel, and the customer report in the other email was the subject of a product safety ticket addressed by Mr. Jones's product safety group. (Jones Decl. ¶ 8)

For obvious reasons, Mr. Bezos does not personally address each email sent to his email address, and he did not do so here. His email address receives so many emails each day that a team of executive assistants monitors the account and forwards emails where they need to go. (Jones Decl. ¶ 10) As Mr. Jones explains, the procedure for product safety issues that are reported to an Amazon email address outside the normal channel is to forward them to product safety and/or the legal department for action. The initial recipient of the email would not ordinarily take any action

8

other than forwarding the email to the proper group within Amazon, which is exactly what occurred here. (Jones Decl. ¶ 10) The fact that two emails were sent to Mr. Bezos's email account does not indicate that he had any knowledge of or participation in any hoverboard events, let alone any events or facts that bear on this specific case. Mr. Jones was the head of the product safety group and confirms in his declaration that Mr. Bezos was not involved at all. (Jones Decl. ¶ 9)

Plaintiffs' request for Mr. Bezos's deposition does not even meet the bare relevance standard, much less the proportionality requirement, and should be barred on that basis alone. Put in terms of the other Rule 26 considerations that require limiting discovery, Plaintiffs have "ample opportunity to obtain the information" they need from the product safety personnel directly involved in the hoverboard events; the discovery sought "can be obtained from a source that is … less burdensome" than deposing the CEO of a worldwide company; and there is no benefit whatsoever of deposing Mr. Bezos in resolving the issues in this case.

The burden on Mr. Bezos and Amazon is particularly acute, even if Mr. Bezos had any relevant information. Like all large companies, Amazon is routinely involved in litigation. A search of PACER reveals more than 1,700 cases listing some variant of "Amazon.com" as a party—and that is just in federal court. If Mr. Bezos's non-existent connection to this case were sufficient to require his attendance at a deposition, he would likely have to sit for dozens of depositions every year under the same standard. This "tremendous potential for abuse or harassment" is why courts apply "judicial scrutiny" to requests to depose high-level executives. *El Camino*, 2008 WL 4833009 at *1.

The Sixth Circuit has affirmed protective orders in similar situations. In *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, a trademark infringement lawsuit, the defendants sought to depose Priscilla Presley, the President of the plaintiff corporation. 936 F.2d 889, 892 (6th Cir.

1991). In opposing the deposition, the plaintiff argued that Ms. Presley had "virtually no personal knowledge of the facts giving rise to this litigation, and that the purpose of the deposition was to annoy and harass her." *Id.* The district court granted the protective order, finding that "no useful purpose would be served by any deposition of Ms. Presley," and the Sixth Circuit affirmed. *Id.* at 892, 894.

In *Nix v. Sword*, the district court entered a protective order quashing the deposition of a congressman in a case alleging illegal wiretapping. 11 F. App'x 498, 500 (6th Cir. 2001). The congressman had argued, among other things, that "it would be difficult for him to schedule a deposition, because of his legislative duties" and "he had no personal knowledge about the alleged wiretapping." *Id.* The Sixth Circuit affirmed the quashing of the deposition because the district court appropriately "balanced the concerns of Congressman Hoke to be protected from annoyance, embarrassment and undue burden against the Plaintiffs' right to discovery." *Id.* at 501.

In sum, Plaintiffs' desire for Mr. Bezos's useless deposition is clearly outweighed by the massive burden it would cause.

### b. Doug Herrington, Senior VP North America Retail

Doug Herrington has been the Senior Vice President of North America Retail since January 2015, and held other high-level positions at Amazon for many years before that. He runs Amazon's retail business in North America, which is a multi-billion dollar business and one of Amazon's largest business units. He is essentially the CEO of a company within a company. Diverting Mr. Herrington's attention away from Amazon's retail business, just two months before the peak sales season, would create a huge and unquantifiable burden on Amazon.

Mr. Herrington was involved in the final decision to remove hoverboards from the Amazon marketplace in late 2015, but not involved at the detailed level of the product safety personnel like Damon Jones and Jeremy Pelley. As the head of North America retail, Mr. Herrington was one of

10

the people who approved the decision to remove hoverboards from the marketplace, and the product safety people and others working for him kept him informed of the hoverboard issue. As documented in Mr. Jones's declaration, however, Mr. Herrington's knowledge of the hoverboard events was based on communications he was copied on and what the product safety people reported to him. He was not personally involved in analyzing the hoverboard incidents or planning the details of Amazon's response. He accepted the recommendations of the people whose direct job it was to address those issues. (Jones Decl. ¶¶ 11-12)

Mr. Herrington does not have any information that product safety personnel like Damon Jones and Jeremy Pelley do not have. The product safety personnel and others generated the information and recommendations that were reported up to Mr. Herrington. The Court should preclude the deposition of Mr. Herrington unless and until Plaintiffs can demonstrate a need to obtain information from him that they cannot obtain from Mr. Jones and Mr. Pelley. In the words of Rule 26, Plaintiffs have "ample opportunity to obtain the information" they need from the product safety witnesses. Deposing Mr. Herrington will be "unreasonably cumulative or duplicative" of the product safety witnesses, and the latter witnesses are a source of discovery that is "more convenient, less burdensome, [and] less expensive." And any marginal benefit that could be achieved by deposing Mr. Herrington is vastly outweighed by the burdens on him and on Amazon.

### c. Carletta Ooton, VP Health and Safety, Sustainability, Security & Compliance

Carletta Ooton is also a very senior Amazon executive. She has been the Vice President, Health and Safety, Sustainability, Security & Compliance since November 2014. Ms. Ooton leads a large organization with Amazon covering many disparate and critical functions. Groups reporting to Ms. Ooton are responsible for global security and loss prevention (*i.e.*, protection of Amazon

sites, people, and inventory), sustainability (which includes energy and environmental sustainability, corporate social responsibility, packaging, and sustainability science and innovation), and compliance (which includes food safety, product safety, restricted products, global trade, and dangerous goods). Diverting Ms. Ooton's attention away from that work would be hugely detrimental to Amazon.

Ms. Ooton has no knowledge relevant to this lawsuit that cannot be obtained readily, and in more detail, from other sources. The product safety team that Damon Jones led reported to Ms. Ooton. She was copied on some communications and was involved in the hoverboard investigation because people who reported to her were involved. Like Mr. Herrington, her knowledge of the events is derivative of that possessed by Damon Jones and Jeremy Pelley. (Jones Decl. ¶¶ 13-14) As with Mr. Herrington, Plaintiffs should not be permitted to depose Ms. Ooton unless and until they make a showing that Ms. Ooton possesses some information that they cannot otherwise obtain from the main product safety team participants. Even then, any marginal benefit to be obtained from such information would be outweighed by the burdens on Ms. Ooton and Amazon.

**2.      The Court should preclude the depositions of Lena Bryant and Rachel Moss because they were not involved in any material way in the hoverboard events**

Lena Bryant is the Director of Worldwide Dangerous Goods Compliance at Amazon. Rachel Moss is a hazardous waste chemist who works in that department. "Dangerous Goods" does not refer to defective products. It refers, rather, to hazardous materials that are subject to a set of regulations commonly known as "dangerous goods regulations." *See, e.g.*, U.S. Department of Transportation, "Hazardous Materials/Dangerous Goods Regulations," *available at* https://www.fmcsa.dot.gov/regulations/hazardous-materials/hazardous-materialsdangerous-goods-regulations. Amazon's Dangerous Goods Department ensures that products shipped or

stored by Amazon comply with these regulations. It is undisputed that Amazon did not ship and never touched the hoverboard that Ms. Fox purchased.

Ms. Bryant was not involved in the hoverboard events. (Jones Decl. ¶ 17) Ms. Moss appears on a single email in Amazon's production, in which she gathered a list of "likely lithium-battery powered e-scooter/e-skateboard ASINs active in the US, as classified with hazmat attributes as UN3171..." at the request of Damon Jones. She simply provided a piece of information requested by the product safety team but did not otherwise participate in the hoverboard events. (Jones Decl. ¶ 17)

The Dangerous Goods Department employees can offer no relevant information to Plaintiffs. The burden on these employees and on Amazon in preparing for and participating in these depositions outweighs Plaintiffs' non-existent need for them.

**3.      The Court should limit Plaintiffs' Rule 30(b)(6) deposition notice to relevant topics**

Plaintiffs served an extensive Rule 30(b)(6) deposition notice on Amazon. (Ex. C) Amazon intends to produce witnesses to cover the majority of the topics Plaintiffs included in the notice.[2] Amazon moves for a protective order to exclude the following improper topics.

**a.      Dangerous Goods Department**

Topics 5 and 11 seek information about the Dangerous Goods Department.

- Topic 5:

  > The reasons why a product sold via the Amazon website in 2015 came under the direction, guidance, or supervision of Amazon's Dangerous Goods Department, including whether hoverboards ever came under the direction, guidance, or supervision of the Dangerous Goods Department.

---

[2] Amazon intends to serve objections to the wording of several of those requests, but will produce a witness to reasonably meet the substance of the requests.

- Topic 11:

> The staffing and organizational structure of the Dangerous Goods department during the time period September 2015 through February 2016, including:
> (a) The identity of each employee, their respective supervisor, and each such person's job duties;
> (b) The person(s) ultimately responsible for determining whether a product falls under the direction, guidance, or supervision of the Dangerous Goods department;
> (c) The date upon which hoverboards, and specifically the product purchased by Ms. Fox came under the direction, supervision, or guidance of the Dangerous Goods department and all reasons why.
> (d) The distinction between a product falling under the Dangerous Goods department and a product classified "Hazmat."

As explained above and in the Jones declaration, the Dangerous Goods Department deals with shipping and storage regulations. Amazon had no role in shipping or storing the hoverboard that Ms. Fox purchased. The Dangerous Goods Department therefore has no relevance to this case. Amazon should not be required to prepare and produce a witness on these categories of irrelevant information.

### b. Privileged Information

Topic 13 seeks information "upon which Amazon based its denial in paragraphs 29, 30, 38, 45, 46, and 48 of its Answer To First Amended Complaint." Amazon's answer to the complaint was drafted entirely by outside counsel, in consultation with Amazon's in-house counsel. The decisions made in responding to Plaintiffs' allegations are protected by the attorney-client privilege and work product doctrine. As phrased, this topic seeks to depose an Amazon witness on information that cannot be separated from the privileged manner in which Amazon's answer was drafted.

In contrast, Amazon does plan to produce a witness to testify on Topic 1, which seeks information to support Amazon's "denial that it was a seller of the hoverboard purchased by Plaintiff Megan Fox, as asserted in its Answer To First Amended Complaint." Topic 1 is not

14

seeking information inextricably bound up in the privileged decisions made in responding to the complaint because it seeks facts about the third-party seller system, a central issue in this case, and simply references Amazon's answer as one place that contention is made. Topic 13, on the other hand, seeks information that is entirely dependent on the privileged decisions Amazon made in responding to the complaint.

### c. Other Irrelevant Information

Topic 9 seeks information regarding the "total dollar amount of all refunds or returns by Amazon to customers who purchased hoverboards through the Amazon website from July 2015 through February 2016." This information is totally irrelevant and unfairly intrusive into Amazon's business. Financial information about returns and refunds has no bearing on whether Amazon can be held liable in this case, nor does it have any bearing on Plaintiffs' alleged damages. And Ms. Fox never attempted to return the hoverboard she purchased from W-Deals.

Topic 12 seeks a litany of information regarding an irrelevant contract dispute between Amazon and a vendor, J.C. Berg.

> With respect to Amazon's relationship with J.C. Berg Inc. in 2015 and 2016 regarding the sale of hoverboards:
>
> a)  All reasons why Amazon decided not to purchase and/or stop paying for hoverboards sold by J.C. Berg.
> b)  The factual basis for Amazon employee Rob Passberger's e-mail of November 23, 2015 to J.C. Berg stating that J.C. Berg's prices were "not competitive with offers from the same products on our third-party market-place."
> c)  The factual basis for Amazon employee Brendan Trickey's statement to J.C. Berg representatives in a phone call in early December 2015 that he had already been in contact with other vendors to obtain hoverboards at a much lower cost than J.C. Berg had agreed to supply them.
> d)  The basis for a December 4, 2015 e-mail from "Chris U." of Amazon.com Vendor Services instructing J.C. Berg, "Please do not answer any emails or calls from these individuals [referring to Mr. Passberger and Mr. Trickey]."
> e)  The basis for a December 3, 2015 e-mail from Amazon to J.C. Berg demanding "all safety and compliance documentation" for its

15

hoverboard inventory, including specifically the information or documents sought.

f)  The current status of the arbitration between J.C. Berg and Amazon with respect to the sale of hoverboards in 2015 and 2016, including a summary of all documents produced by Amazon as well as a summary of any witnesses who have provided sworn testimony.

Amazon's arbitration with J.C. Berg has nothing to do with this case.  Ms. Fox did not deal with J.C. Berg. She did not buy her hoverboard from J.C. Berg, and W-Deals has no connection to J.C. Berg. Amazon produced the emails about J.C. Berg in a good-faith effort to respond to Plaintiffs' broad discovery requests. Plaintiffs now seek to use Amazon's good-faith effort against it by using the production as a foot in the door to expand the scope of discovery to include litigation that has nothing to do with this case. The J.C. Berg dispute has no relevance here, and it would be unduly burdensome for Amazon to prepare and produce witnesses to testify about it.

**E.  Conclusion**

Amazon does not seek to preclude Plaintiffs from obtaining facts about Amazon's response to reports of safety issues involving hoverboard batteries. But Plaintiffs want to do much more than obtain facts central to this lawsuit. They want to depose the CEO of one of the world's largest companies on issues he knows nothing about. They want to depose other high-level executives to obtain facts that were developed and reported to them by others—facts Plaintiffs can obtain by deposing the product safety witnesses whom Amazon has already agreed to produce. And Plaintiffs want to force Amazon to produce individuals with no material connection to the hoverboard events, and inquire into 30(b)(6) topics that are far afield of the issues in this case. Rule 26 bars Plaintiffs' attempts to obtain irrelevant facts, and to obtain relevant facts from the senior executives when they can obtain them directly from the product safety witnesses. The Court should enter a protective order quashing the deposition notices to Jeff Bezos, Doug Herrington,

16

Carletta Ooton, Lena Bryant, and Rachel Moss, and striking categories 5, 9, 11, 12, and 13 from the Rule 30(b)(6) deposition notice.

**F.     Good Faith Certification**

The undersigned counsel certifies that she has made good faith efforts to resolve the issue raised in this motion with opposing counsel without success.

Respectfully submitted,

s/Lela M. Hollabaugh
Lela M. Hollabaugh (TN BPR No. 14894)
William F. Goodman (TN BPR No. 33077)
Charles F. Spainhour (TN BPR No. 34453)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
615-252-2348
lhollabaugh@bradley.com
wgoodman@bradley.com
fspainhour@bradley.com

– and –

Brendan Murphy (*admitted pro hac vice*)
Rachel E. Constantino-Wallace (*admitted pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
206-359-8000
bmurphy@perkinscoie.com
rconstantinowallace@perkinscoie.com

*Attorneys for Amazon*

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing has been served upon the following via the court's electronic filing system on this the 8th day of September, 2017:

Mark E. Spear
Kaylin L. Hart
Spear, Spear & Hamby, P.C.
169 Dauphin Street
Suite 200
Mobile, AL  36602

Steven E. Anderson
Sara F. Reynolds
Anderson & Reynolds, PLC
120 30th Avenue, North
Nashville, TN  37203

*s/Lela M. Hollabaugh*

18